310 Ga. 714
FINAL COPY

S20A1574, S20X1575.  HALL v. JACKSON; and vice versa.

NAHMIAS, Presiding Justice.

In 2007, Matthew Jackson was convicted of 28 counts of armed robbery and other crimes. During his trial, motion for new trial proceeding, and direct appeal, in which the Court of Appeals affirmed his convictions, Jackson was represented by lawyers from the Paulding County Public Defender's Office. In 2016, represented by a lawyer in private practice, Jackson filed a petition for habeas corpus claiming that his trial counsel provided ineffective assistance in three ways and that his appellate counsel provided ineffective assistance because that lawyer had a conflict of interest that prevented him from raising ineffective assistance of trial counsel claims in Jackson's amended motion for new trial. The habeas court denied relief as to Jackson's ineffective assistance of trial counsel claims, but granted relief and set aside Jackson's convictions on the ground that his appellate counsel had an actual conflict of interest.

Warden Phillip Hall appeals the portion of the habeas court's judgment granting relief on the conflict of interest claim. In a cross-appeal, Jackson contends that the habeas court erred by denying relief as to his ineffective assistance of trial counsel claims.

As we explain below in the Warden's appeal, Jackson's appellate counsel had an actual conflict of interest that significantly and adversely affected his performance, so we affirm the grant of habeas relief. However, we vacate the part of the habeas court's judgment setting aside Jackson's convictions, because the proper remedy under these circumstances is to grant Jackson a new opportunity to pursue a motion for new trial and direct appeal with conflict-free counsel, not a new trial. In Jackson's cross-appeal, we vacate the portion of the habeas court's judgment denying relief as to the ineffective assistance of trial counsel claims, because such claims should be evaluated and raised in a new motion for new trial by conflict-free counsel and decided in the first instance by the trial court.

1. In February 2007, while represented by Charles Norman of

the Paulding County Public Defender's Office, Jackson was tried on dozens of charges in connection with robberies by men wearing face coverings at a Paulding County dry cleaners and restaurant. The jury found him guilty of 28 counts of armed robbery, two counts of possession of a firearm during the commission of a crime, and one count of theft by receiving stolen property. The trial court sentenced Jackson to serve four life sentences in prison for four of the armed robbery counts and consecutive or concurrent terms of 20 years for each of the remaining armed robbery counts and five years for each of the firearm counts, along with ten years on probation for the theft count.

(a) In April 2008, after the trial court granted Jackson's motion for an out-of-time appeal, he filed a motion for new trial through new counsel from the Paulding County Public Defender's Office. Five years later, in September 2013, he amended the motion through another lawyer from that office, Andrew Fleischman.[1]

---

[1] For simplicity's sake, we will refer to Fleischman as Jackson's "appellate" counsel, but it should be understood that Fleischman also represented Jackson in the motion for new trial proceeding.

Fleischman raised four claims of trial court error, all of which were related to the court's denial in part of Jackson's pretrial motion to suppress evidence that investigators had collected from his mother's house, where Jackson was living.[2] Fleischman claimed in two enumerations of error that all of the evidence taken from the house should have been suppressed because during the trial — after the trial court had partially denied the motion to suppress — Atlanta Police Department Officer Cojo Joyner testified that after investigators arrested Jackson at the house and conducted a "protective sweep" of the residence, Officer Joyner found a handgun linked to the restaurant robbery in a basement bedroom during a "secondary sweep." Officer Joyner had not testified at the pretrial hearing on the motion to suppress, where there was no mention of a "secondary" sweep.

Fleischman argued that the secondary sweep was unlawful

---

[2] Although the trial court denied the motion to suppress as to most of the evidence that was found in the house, the court granted the motion as to two drug-related items, concluding that officers did not have probable cause to seize those items.

because Officer Joyner found the gun after investigators had completed their search for potentially dangerous individuals during the protective sweep; that based on the unlawful discovery of the gun, investigators obtained a search warrant and collected the handgun and several other items of evidence linked to the robberies; and that about a week later, investigators collected additional evidence after they obtained a second search warrant that was largely based on the discovery of the gun and the other evidence gathered during the first search. Fleischman asserted that all of the evidence found during the execution of the two search warrants should have been suppressed, as the warrants were based on Officer Joyner's discovery of the gun during the "impermissible secondary sweep."[3] At the hearing on the motion for new trial, the trial court orally denied the motion.

---

[3] In the other two claims raised in the amended motion for new trial, Fleischman argued that the trial court erred in its partial denial of the pretrial motion to suppress because the evidence did not show that the handgun that Officer Joyner found was in plain view and because the protective sweep of the house was not authorized, as investigators did not have a reasonable articulable suspicion that dangerous individuals were inside the house. These claims had been raised by trial counsel in the motion to suppress and ruled on by the trial court in its order denying the motion.

Fleischman then filed a motion for reconsideration, and the court held a hearing on that motion, during which Fleischman submitted Officer Joyner's personnel file to try to show based on the officer's disciplinary history that his trial testimony that he found the handgun in plain view was not credible. The court reserved ruling on whether that evidence was admissible. In February 2014, the trial court entered an order denying the motion for new trial and the motion for reconsideration, and about a month later, the court issued an amended order denying the motions, which expressly said that Officer Joyner's personnel file was irrelevant and was not considered by the court in reaching its decision.

(b) Still represented by Fleischman, Jackson appealed, again raising the claims that the trial court erred by denying in part the motion to suppress because Officer Joyner found the handgun during an unlawful secondary sweep and, consequently, that all of the evidence found during the execution of the two search warrants should have been suppressed. In addition, Fleischman claimed that the trial court erred by ruling that the protective sweep was incident

to a valid arrest because the arrest warrant for Jackson did not include the information required by OCGA § 17-4-41 for an arrest on a theft offense and was therefore "void." Fleischman also claimed that the State committed a due process violation under *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963), by failing to call Officer Joyner to testify at the pretrial motion to suppress hearing and by failing to disclose the officer's disciplinary history before the trial.[4]

The Court of Appeals affirmed in an unpublished opinion. See *Jackson v. State*, 331 Ga. App. XXVI (Case No. A14A1853) (March 25, 2015) (unpublished). The court held that Jackson had waived appellate review of all of these claims. As to the claim that the handgun was found by Officer Joyner during an unlawful secondary sweep, the court noted that "the only evidence [presented at the suppression hearing] showed that the gun at issue had been found during a single protective sweep," and that Officer Joyner testified

---

[4] Fleischman also contended again that the protective sweep of the house was not authorized.

for the first time at trial and stated that he had found the gun during this "secondary sweep after the officers had already cleared the house of people." Id. at 14-15. The Court of Appeals pretermitted deciding whether the secondary sweep was unlawful, because when Officer Joyner testified about the issue at trial, Jackson's trial counsel Norman did not renew his motion to suppress to assert that new ground or ask the trial court to reconsider its earlier ruling denying the motion in relevant part, so the trial court did not abuse its discretion "in declining to reconsider its earlier ruling in light of Joyner's testimony." Id. at 15. Accordingly, the Court of Appeals also rejected Jackson's claim that the evidence obtained from the subsequent execution of the search warrants should be suppressed. See id. at 15-16.

Similarly, as to Jackson's claim regarding OCGA § 17-4-41, the Court of Appeals pretermitted deciding whether the arrest warrant for Jackson was "void" for lack of specificity, concluding that he had waived the claim because Norman did not raise it in the motion to suppress and the trial court did not rule on it. See *Jackson*, slip op.

8

at 9-10 & n.3. The Court of Appeals also noted that Jackson made no argument that he did not have a copy of the arrest warrant when he filed the motion to suppress and that even if he did not have a copy at that time, he did not assert that the warrant was void when it was admitted into evidence during the trial. See id. at 10. Finally, the Court of Appeals held that Jackson also waived his *Brady* claims for appeal because he did not raise those claims in the trial court. See id. at 16-18.[5] This Court denied Jackson's petition for certiorari. See *Jackson v. State*, Case No. S15C1266 (Sept. 8, 2015).

(c) In April 2016, Jackson, represented by a lawyer in private practice, filed a petition for habeas corpus relief, claiming that his trial counsel Norman provided ineffective assistance by failing to renew the motion to suppress after Officer Joyner testified about the secondary sweep, failing to challenge the arrest warrant's validity under OCGA § 17-4-41, and failing to allege that the State violated

---

[5] As to Jackson's remaining, properly preserved claim, the Court of Appeals held that the trial court correctly ruled that ample articulable facts supported a reasonable suspicion that dangerous individuals potentially were inside the house, so the protective sweep was authorized. See *Jackson*, slip op. at 11-14.

9

*Brady* by not calling Officer Joyner to testify at the suppression hearing and by not providing Officer Joyner's disciplinary history to the defense. In addition, Jackson claimed that his appellate counsel Fleischman provided ineffective assistance. Jackson argued that because Fleischman worked for the Paulding County Public Defender's Office, where Norman was the Chief Assistant Public Defender, Fleischman had a conflict of interest; that consequently, Fleischman could not raise in the amended motion for new trial any ineffective assistance of trial counsel claims; and that a presumption of prejudice applied because the conflict significantly and adversely affected Fleischman's performance.

In May 2017, the habeas court held an evidentiary hearing, at which Fleischman and Norman testified. Fleischman testified that at the time he represented Jackson, he worked as an appellate lawyer at the Paulding County Public Defender's Office, where Norman was his direct supervisor; he considered raising in the amended motion for new trial the three ineffective assistance of trial counsel claims raised in the habeas petition; he spoke to Norman

10

and suggested that they transfer the case to the conflict division of the Georgia Public Defender Council, but Norman became angry with him; and he did not raise those ineffective assistance claims due to the conflict of interest, even though he believed that it would have been better to raise those claims along with the claims of trial court error that he raised in the amended motion for new trial and on direct appeal. Similarly, Norman testified that Fleischman consulted him about raising ineffective assistance of trial counsel claims in the amended motion for new trial; that Norman was offended and asked Fleischman to leave his office; and that the claims probably should have been raised. Documents and transcripts related to the pretrial motion to suppress, the trial, the motion for new trial, and the appeal were also admitted into evidence during the habeas proceedings.

On June 9, 2020, the habeas court issued an order denying relief as to Jackson's three claims of ineffective assistance of trial counsel but granting relief on the ground that Fleischman provided ineffective assistance of appellate counsel due to his conflict of

interest. Recognizing that lawyers from a public defender's office are treated as members of the same firm for purposes of raising ineffective assistance claims, the court found that there was an "'actual conflict' and consequently any necessary 'prejudice' is presumed." As a remedy, the habeas court set aside Jackson's convictions and vacated his sentences.

The Warden filed a timely notice of appeal, arguing in his brief here that the habeas court erred in granting Jackson relief on the conflict of interest claim and that even if the grant of relief was proper, the court's remedy of setting aside Jackson's convictions was not appropriate. Jackson filed a timely cross-appeal, arguing that the habeas court should have also granted him relief on his claims that his trial counsel provided ineffective assistance.

*Claims Raised by the Warden in Case No. S20A1574*

2. (a) The Warden contends first that the habeas court erred by granting Jackson relief on the ground that his appellate counsel Fleischman provided ineffective assistance because he had a conflict of interest that prevented him from raising in Jackson's amended

motion for new trial the three ineffective assistance of trial counsel claims that were raised in the habeas petition. When reviewing a habeas court's decision on a defendant's attorney conflict of interest claim, we accept the court's factual findings unless they are clearly erroneous, but we apply the law to those facts de novo. See *Edwards v. Lewis*, 283 Ga. 345, 349-350 & n.17 (658 SE2d 116) (2008). See also *Tolbert v. State*, 298 Ga. 147, 151 (780 SE2d 298) (2015). Because we conclude below that Fleischman had an actual conflict of interest that significantly and adversely affected his representation of Jackson, the habeas court did not err in granting relief on this ground.

A criminal defendant in Georgia is constitutionally entitled to the effective assistance of counsel during his trial, motion for new trial proceeding, and direct appeal. See *Garland v. State*, 283 Ga. 201, 202 (657 SE2d 842) (2008). See also *Evitts v. Lucey*, 469 U.S. 387, 395, 397 (105 SCt 830, 83 LE2d 821) (1985). "One component of the right to the effective assistance of counsel is the right to representation that is free of actual conflicts of interest." *Edwards*,

13

283 Ga. at 348.

To carry his burden of proving that his appellate counsel Fleischman provided ineffective assistance because Fleischman had a conflict of interest, Jackson must show that "an actual conflict of interest . . . significantly and adversely affected" Fleischman's representation of Jackson. *Tolbert*, 298 Ga. at 150. See also *Mickens v. Taylor*, 535 U.S. 162, 173 (122 SCt 1237, 152 LE2d 291) (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 348 (100 SCt 1708, 64 LE2d 333) (1980). Jackson need not show actual prejudice, that is, a reasonable probability that the outcome of his motion for new trial or direct appeal would have been more favorable to him if Fleischman had not labored under a conflict of interest. See *Edwards*, 283 Ga. at 349. Instead, prejudice is presumed if Jackson "demonstrate[s] that the conflict of interest existed and that it 'significantly affected [Fleischman's] performance.'" Id. (quoting *Mickens*, 535 U.S. at 173).

> [T]he critical question is whether the conflict significantly affected the *representation*, not whether it affected the outcome of the underlying *proceedings*. That is precisely the difference between ineffective assistance of counsel claims generally, where prejudice must be shown [under

14

the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984)], and ineffective assistance of counsel claims involving actual conflicts of interest, which require only a showing of a significant effect on the representation.

Id. at 351 (emphasis in original). See also *Fogarty v. State*, 270 Ga. 609, 611 (513 SE2d 493) (1999) (holding that in the context of an ineffective assistance claim based on an alleged conflict of interest, "the entire focus . . . is upon the adequacy of counsel's performance, rather than upon actual prejudice to the defense").

We have held that the potential for a conflict of interest exists when appellate counsel from the same public defender's office as trial counsel represents a defendant during his motion for new trial proceeding or on direct appeal, because such appellate counsel cannot properly assert a claim of ineffective assistance of counsel against another member of his own office. See, e.g., *Ryan v. Thomas*, 261 Ga. 661, 661 (409 SE2d 507) (1991). See also *Davis v. Turpin*, 273 Ga. 244, 248 (539 SE2d 129) (2000) ("Counsel prosecuting an ineffective assistance claim must be free to operate independently of the attorney whose performance is in question."). Cf. *Chatman v.*

*Mancill*, 280 Ga. 253, 255 (626 SE2d 102) (2006) (explaining that no such potential conflict of interest existed where appellate counsel sought to pursue ineffective assistance claims against counsel who left the public defender's office before appellate counsel was appointed to represent the defendant).

A *potential* conflict, however, "is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. The potential for a conflict of interest when a defendant's trial counsel and appellate counsel work in the same public defender's office ripens into an *actual* conflict only when the conflict significantly and adversely affects the appellate lawyer's representation of the defendant. See *Edwards*, 283 Ga. at 349. See also *Tolbert*, 298 Ga. at 149 (explaining that an "'actual conflict [is not] something separate and apart from adverse effect,'" but rather, an "'actual conflict of interest' means 'a conflict *that affected counsel's performance* — as opposed to a mere theoretical division of loyalties'" (quoting *Mickens*, 535 U.S. at 171 & 172 n.5 (emphasis in original))); *Lamb v. State*, 267 Ga. 41, 42 (472 SE2d 683) (1996) ("[T]he conflict must be palpable

16

and have a substantial basis in fact. A theoretical or speculative conflict will not impugn a conviction which is supported by competent evidence.").

At the hearing on his habeas petition, Jackson presented unusually clear and direct evidence that Fleischman had an actual conflict of interest. Fleischman testified that when he evaluated Jackson's case at the motion for new trial stage, he identified three claims that Norman provided ineffective assistance during Jackson's trial; Fleischman then discussed with Norman, who not only worked in the same public defender's office but also was Fleischman's direct supervisor, transferring the case to the conflict division of the Georgia Public Defender Council so that these claims could be asserted in the amended motion for new trial, but Norman angrily rebuffed him, despite Norman's subsequent testimony that the claims probably should have been raised. As a result, Fleischman did not assert the ineffective assistance claims that he believed should have been raised. He instead alleged in the amended motion and on direct appeal related claims of trial court error that

were destined to fail, as they did, because Norman had not raised those claims in the trial court and they therefore were waived for appellate review.

The Warden does not dispute that Fleischman (and Norman) believed that these ineffective assistance issues were potentially meritorious claims that should have been raised. The Warden also does not dispute that Fleischman could not pursue the claims because he worked in the same office as (and as a subordinate to) trial counsel Norman. The Warden instead relies primarily on *Ryan* and similar cases that hold that a defendant like Jackson, who was represented during his trial, motion for new trial proceeding, and direct appeal by lawyers from the same public defender's office, may raise for the first time in a habeas petition claims that his trial counsel provided ineffective assistance, because his appellate lawyer could not properly assert such claims against another lawyer from the same office. See *Ryan*, 261 Ga. at 661. See also *Williams v. Moody*, 287 Ga. 665, 666-667 (697 SE2d 199) (2010); *Chatman*, 280 Ga. at 254-255. But those holdings were not about the merits of

18

conflict of interest claims. Instead, the holdings were on a procedural issue: we decided that ineffective assistance of trial counsel claims that could not be properly raised in a motion for new trial or on direct appeal were not procedurally barred in habeas proceedings. See *Ryan*, 261 Ga. at 661; *Williams*, 287 Ga. at 666-667; *Chatman*, 280 Ga. at 254-255. Thus, the Warden's reliance on *Ryan* and its progeny is misplaced.

The Warden does cite some cases that address the merits of conflict of interest claims, but those cases are distinguishable, because in none of them did the defendant present evidence credited by the habeas or trial court (and here, essentially undisputed) showing that his lawyer's actions were significantly and adversely affected by an actual conflict of interest, as opposed to those actions reflecting a strategic decision unaffected by a potential conflict. See *Green v. State*, 299 Ga. 337, 341-344 (788 SE2d 380) (2016) (affirming the trial court's ruling that trial counsel's representation of the defendant and a State's witness did not amount to an actual conflict of interest because the defendant "failed to establish that

counsel's decision not to impeach [the witness] 'was the result of a conflict of interest, as opposed to a reasonable strategic decision,'" where trial counsel testified at the motion for new trial hearing about the reasons for his decision (citation omitted)); *Williams*, 287 Ga. at 668 (holding that the habeas court erred by not analyzing whether appellate counsel's failure to raise ineffective assistance of trial counsel claims was the result of his conflict of interest or a strategic decision).[6]

---

[6] Other cases are in accord. See, e.g., *White v. State*, 298 Ga. 416, 418-420 (782 SE2d 280) (2016) (affirming the trial court's ruling that trial counsel's prior representation of a witness to the murder was not an actual conflict of interest because the defendant failed to establish that counsel's decision not to call the witness to testify was the result of an actual conflict of interest rather than a strategic decision, where counsel testified at the motion for new trial hearing that the witness's version of events would not have been helpful to the defendant); *Tolbert*, 298 Ga. at 157 (affirming the trial court's ruling that trial counsel's representation of co-defendants at a joint trial was not an actual conflict of interest, where trial counsel did not testify at the motion for new trial hearing and the record did not show that counsel's choice of defense "was the result of a conflict of interest, as opposed to a reasonable strategic decision, an unreasonable strategic decision, or even inattention and neglect"); *Barrett v. State*, 292 Ga. 160, 175 (733 SE2d 304) (2012) (affirming the trial court's ruling that the defendant did not establish that his trial counsel's failure to call a witness whom counsel represented in other criminal cases was the result of an actual conflict of interest rather than a reasonable strategic decision, because the witness's testimony would not have been admissible at the defendant's trial); *Henry v. State*, 269 Ga. 851, 854 (507 SE2d 419) (1998) (holding that the defendant's assertions of an actual conflict were "mere

20

Here, by contrast, the Warden does not argue, and the evidence presented at the habeas hearing does not show, that Fleischman made a strategic decision not to raise the ineffective assistance of trial counsel claims. Rather, the evidence fully supports the habeas court's conclusion that Fleischman failed to raise the claims because his conflict of interest prevented him from doing so.

Jackson has therefore met his burden of proving that Fleischman's inability to raise what Fleischman believed to be valid ineffective assistance of trial counsel claims in the amended motion for new trial significantly and adversely affected Fleischman's representation of Jackson. Accordingly, Jackson was not required to prove that if Fleischman had raised those claims, they would have had a reasonable probability of success. See, e.g., *Edwards*, 283 Ga. at 350-351; *Fogarty*, 270 Ga. at 611.[7] We therefore affirm the portion

conjecture" where "[n]o evidence was introduced to rebut trial counsel's testimony [at the motion for new trial hearing] that their involvement in [fundraising events for local prosecutors] ha[d] no effect on the zealous representation of their clients").

[7] As we will discuss below in Jackson's cross-appeal, the habeas court improperly ruled on his ineffective assistance of trial counsel claims.

of the habeas court's judgment granting relief to Jackson on the ground that appellate counsel Fleischman provided ineffective assistance because Fleischman had an actual conflict of interest. See *Edwards*, 283 Ga. at 346-347, 350-351 (concluding that the defendant proved that his trial and appellate counsel, who worked for the same public defender's office, had an actual conflict of interest because the evidence at the habeas hearing showed that both lawyers believed that a challenge to the racial composition of the jury array should have been raised at trial and on appeal, but supervisors at the public defender's office instructed them not to pursue the issue).

(b) The Warden also contends that the habeas court erred by setting aside Jackson's convictions and granting him a new trial, rather than a new direct appeal. We agree that a new trial is not the proper remedy in this case.

As we just held, the habeas court properly granted Jackson relief on his claim that his appellate counsel Fleischman had an actual conflict of interest. That conflict significantly and adversely

affected Fleischman's representation of Jackson during the motion for new trial proceeding and direct appeal, which Jackson was entitled to pursue with the benefit of effective, conflict-free counsel. Thus, the appropriate remedy is to grant Jackson a second out-of-time appeal, which will allow him to start the post-conviction process anew with the assistance of conflict-free counsel. Cf. *Trauth v. State*, 295 Ga. 874, 876-877 (763 SE2d 854) (2014) (holding that because the indigent defendant was improperly denied appointed counsel for his direct appeal, he was entitled to habeas relief in the form of a second, out-of-time direct appeal, which "would have the effect of eliminating any proceedings relating to [his] first appeal"); *Roberts v. Caldwell*, 230 Ga. 223, 223 (196 SE2d 444) (1973) (concluding that the defendant, who was denied appointed counsel for his direct appeal, was entitled to a second appeal with the benefit of counsel). See also *Lafler v. Cooper*, 566 U.S. 156, 170 (132 SCt 1376, 182 LE2d 398) (2012) (noting that remedies for Sixth Amendment violations "must 'neutralize the taint' of [the] constitutional violation, while at the same time not grant a windfall

to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution" (citation omitted)); *Ponder v. State,* 260 Ga. 840, 841-842 (400 SE2d 922) (1991) (holding that the grant of an out-of-time appeal as habeas corpus relief allows appellate counsel to pursue a new motion for new trial to raise claims of ineffective assistance of trial counsel). Compare *Milliken v. Stewart,* 276 Ga. 712, 712-713 (583 SE2d 30) (2003) (holding that a new trial, rather than a second direct appeal, was an appropriate remedy where the defendant established that his appellate counsel's failure to raise a meritorious claim constituted ineffective assistance under the *Strickland* test).[8]

Accordingly, while we affirm the grant of habeas relief, we vacate the part of the habeas court's judgment setting aside Jackson's convictions, and we remand the case with the direction that the habeas court enter an order requiring the grant of another

---

[8] Jackson's habeas counsel is retained or pro bono, as there is no right to appointed counsel in habeas proceedings. If that lawyer does not continue to represent Jackson when this case returns to the trial court and Jackson is deemed indigent, he would be entitled to have counsel appointed to represent him.

out-of-time appeal and setting aside the trial court's order denying Jackson's motion for new trial and the Court of Appeals's decision affirming his convictions so that he may pursue post-conviction remedies in the trial court with the assistance of conflict-free counsel.

### *Claims Raised by Jackson in Case No. S20X1575*

3. In his cross-appeal, Jackson contends that the habeas court erred by denying relief as to his three claims that trial counsel Norman provided ineffective assistance. Any such claims, however, should be evaluated and raised in a new motion for new trial by conflict-free counsel and addressed in the first instance by the trial court. Cf. *Trauth*, 295 Ga. at 876; *Ponder*, 260 Ga. at 842. We therefore vacate the part of the habeas court's order denying relief as to the claims of ineffective assistance of trial counsel that Jackson raised in his habeas petition (and we express no opinion on the merits of those claims).

*Judgment affirmed in part and vacated in part, and case remanded with direction in Case No. S20A1574. Judgment vacated in part in Case No. S20X1575. All the Justices concur, except*

25

*Ellington and McMillian, JJ., disqualified.*

DECIDED FEBRUARY 1, 2021.

Habeas corpus. Telfair Superior Court. Before Judge Johnson.

*Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Taylor Lee & Associates, Stephen E. Brown-Bennett*, for appellee.